IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

Vs.                                              No.  04-40001-02-SAC

FELIPE BEDOLLA-IZAZAGA,

           Defendant.

MEMORANDUM AND ORDER

The case comes on for sentencing of the defendant following the jury's guilty verdict returned March 21, 2005, in which the defendant was convicted of one count of conspiracy to distribute methamphetamine, three counts of using a communication facility to facilitate a drug offense, two counts of distributing methamphetamine, one count of possession with intent to distribute methamphetamine, and one count of making a building available for the purpose of using, storing or distributing a controlled substance. The PSR recommends a base offense of 38 pursuant to U.S.S.G. § 2D1.1(c)(1) on a finding that the offense involves 1.8 kilograms of actual methamphetamine, a two-level enhancement for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1), and a

four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) on a finding that the defendant was an organizer or leader in an offense involving five or more participants. With a total offense level of 43 and a criminal history category of one, the sentencing table calls for a sentence of life imprisonment.

The defendant objects to the finding on the amount of the drugs involved. The defendant challenges the finding as speculative and dependent upon unreliable approximations made by one witness, Juan Carlos Verducco-Camarena. The defendant complains that this amount of methamphetamine was neither charged in the indictment nor found by the jury in its verdict. The defendant asks the court to sentence him only on the drug amounts charged in the counts of conviction. The defendant grounds his request on *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005), and his reading of these decisions that prevents a sentencing court from making findings that increase the sentencing range beyond the statutory maximum established from the jury's findings. The defendant takes aim at the two sentencing enhancements, firearm possession and organizer or leader, firing the same Sixth Amendment volley. Finally, the defendant contends the life sentence recommended by the sentencing guidelines would be unreasonable and unjustified in light of no prior criminal record and the facts and circumstances of the offense and would constitute an

unacceptable disparity in sentences received by others convicted of the same or similar offenses.

In *United States v. Booker*, 125 S. Ct. 738, 756, 2005 WL 50108 (Jan. 12, 2005), the Court "reaffirm[ed its] holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Thus, the Court determined that the mandatory enforcement of the United States Sentencing Guidelines violates the Sixth Amendment "when judge-found facts, . . ., are employed to enhance a sentence." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005). To keep this unconstitutional scenario from recurring, the Court severed, in part, the provision of the Sentencing Reform Act (18 U.S.C. § 3553(b)(1)) which made the guidelines mandatory. *Booker*, 125 S. Ct. at 756. The sentencing guidelines now are "effectively advisory." 125 S. Ct. at 757. The Act still "requires a sentencing court to consider Guidelines ranges, *see* 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, *see* 3553(a) (Supp. 2004)." *Id*. Put another way, sentencing courts, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. *See* 18

U.S.C.A. §§ 3553(a)(4), (5) (Supp.2004)." *Id*. at 767.

The defendant argues that the Sixth Amendment as applied in *Booker* requires that his sentence be predicated exclusively on the facts decided by the jury and reflected in its verdict. This argument requires one to read *Booker's* Sixth Amendment ruling and ignore *Booker's* remedial ruling. This is done in the futile attempt to resuscitate the very Sixth Amendment problem uniquely put to rest by the Court's remedial opinion in *Booker*. Without the provisions that make the guidelines "mandatory and impose binding requirements on all sentencing judges–the statute falls outside the scope of *Apprendi's* requirement." 125 S. Ct. at 764 (quotation marks and citation omitted). "In imposing this remedy, the Court specifically rejected defense suggestions that the Sixth Amendment holding be engrafted on the Sentencing Guidelines, or that provisions of the Sentencing Guidelines allowing judicial factfinding be excised." *United States v. Lynch*, 397 F.3d 1270, 1272 (10th Cir. 2005) (citing *Booker*, 125 S. Ct. at 768-69). That the defendant was not charged with different drug amounts and sentencing enhancements and that the jury was not asked to decide these same matters do not bar this court from engaging in judicial factfinding for the purpose of determining the advisory guideline sentencing range. The Supreme Court in *Booker* made it unmistakably clear that not only its Sixth Amendment ruling but also its remedial

opinion are to be applied retroactively "to all cases on direct review" or those cases not yet final.  125 S. Ct. at 769.  The defendant's general Sixth Amendment objection to the amount of drugs and the other sentencing enhancements is overruled.

The court next considers the defendant's specific objection to the finding that the offense involved 1.8 kilograms of actual methamphetamine.  "When a defendant objects to a fact in a presentence report, the government must prove that fact at a sentencing hearing by a preponderance of the evidence."  *United States v. Shinault*, 147 F.3d 1266, 1278 (10th Cir.) (citing *United States v. Easterling*, 921 F.2d 1073, 1078 (10th Cir. 1990), *cert. denied*, 500 U.S. 937 (1991)), *cert. denied*, 525 U.S. 988 (1998).  Under § 2D1.1, "[t]he Government has the burden of proving the quantity of drugs by a preponderance of the evidence" *United States v. Gigley*, 213 F.3d 509, 518 (10th Cir. 2000), and the "evidence relied upon must possess a minimum indicia of reliability," *United States v. Cruz Camacho*, 137 F.3d 1220, 1225 (10th Cir. 1998).  The Sentencing Guidelines "permit a court to consider all 'relevant conduct' when determining the base offense level for someone convicted of an offense."  *United States v. Asch*, 207 F.3d 1238, 1243 (10th Cir. 2000) (citations omitted).  Under U.S.S.G. § 1B1.3(a)(2), offenses which are groupable under U.S.S.G. § 3D1.2(d) are part of a defendant's relevant

conduct if they are part of the same course of conduct or common scheme or plan as the count of conviction. *United States v. Moore*, 130 F.3d 1414, 1416 (10th Cir.1997).

      Paragraph fifty of the PSR summarizes and totals the different quantities of methamphetamine actually obtained in transactions with the defendant or his co-conspirators and/or seized during the searches of the residences of the defendant and his co-conspirators. The defendant lodges no objection to the accuracy of this calculation and admits this paragraph represents "the total amount of drugs distributed, not only by the defendant, but also those amounts alleged to have been distributed by Mariano Bedolla, Eloy Salinas-Rosas and Juan Carlos Verducco-Camarena." (Dk. 219, p. 2). From the evidence at trial, the court finds that the defendant and the conspiracy with which he was charged and convicted were the sources of the methamphetamine distributed in these controlled purchases or found at the different residences. The court further finds that these other transactions and seized drugs constitute relevant conduct in being part of the same course of conduct or common scheme or plan as the counts of conviction. The court overrules the defendant's objection to relying on the 699.58 grams of actual methamphetamine found in paragraph fifty in calculating the base offense level.

      The court, however, sustains the defendant's objection to the PSR's

finding that the base offense level should be based on Juan Carlos Verducco-Camarena's testimony about the number of trips to California and on the number of buckets of cutting agent found at the different residences.  The court recalls the testimony on the number of California trips and the amount of drugs believed to have been transported on each trip.  The court's impression of that testimony is that it lacks the indicia of reliability on which to base a finding of relevant conduct.  The testimony was uncertain and inconsistent on the timing and number of trips to California, and cross examination successfully revealed weak inferences underlying the testimony.  As for the cutting agent buckets, the evidence at trial did not persuade the court that each bucket was necessarily linked to the charged conspiracy.  Thus, the court accepts the finding of 699.58 grams of actual methamphetamine laid out in paragraph fifty as the more accurate determination of quantity based on the reliable evidence at trial and accordingly reduces the base offense level from 38 to 36.

This ruling changes the guideline sentencing range to 324 to 405 months and moots the defendant's arguments on the unreasonableness of a life sentence.

IT IS THEREFORE ORDERED that the defendant's objection to the PSR is sustained in part and overruled in part.

Dated this 23rd day of June, 2005, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge